(37 Misc. Rep. 442.)

### MURDOCK v. HITCHCOCK et al.

(Supreme Court, Special Term, Queens County. March, 1902.)

MORTGAGE—LIEN—EQUITIES.

    The owners of certain land entered into an executory contract with defendant for a sale to him at the end of three years of whatever was left of the land, provided by that time he had sold at least half of it, and authorized him to make a plat of the land, and contract to sell lots therein, and, on certain payments being made to them, to give deeds to

the purchasers, and allowed him to act as absolute owner of the land. A woman thereafter contracted with him for the purchase of a lot in the tract, and had nearly paid up the installments when defendant failed. She then offered to pay the balance. *Held* that, on payment of such balance to his general assignee, she was entitled to have a deed of the lot, as against the assignee of a mortgage, covering the lot, which defendant had given to the owners of the land on settlement of the contract, or in return for their deed of that portion of the land which they had not deeded at the time.

Action by Cynthia H. Murdock against Benjamin W. Hitchcock and others. Demurrer to answer overruled.

In 1888 Oscar F. Shaw and John C. Shaw, plaintiff's assignors, as executors of the last will and testament of William Shaw, deceased, entered into a written agreement with the defendant Benjamin W. Hitchcock, by the terms of which said executors, as owners in fee of a large tract of land situated in the town of Jamaica, Long Island, permitted said Hitchcock to improve said land, divide it into lots and plots, lay out streets, plant trees, and pay all taxes and assessments. Said Hitchcock was to account to said Shaws for all moneys expended on such improvements every four months. He was further permitted to enter into contract of sale with prospective purchasers of said lots, and, upon his paying to the Shaws the sum of 8½ cents per square foot, they agreed to give deeds to such purchasers. Said agreement was to continue for three years, and, if at the end of that time one-half of the land so laid out should have been sold, then the Shaws agreed to deed the remainder of said land to said Hitchcock; he to give back his bond, secured by a mortgage on said land. This agreement was never recorded or filed. The defendant Louise Quinlisk in 1889 entered into a contract of purchase of a lot with said Hitchcock, who held himself out as owner thereof. She had by the year 1892 nearly completed the payments (made in installments under the contract) required by said contract, which payments were so made prior to the time limited in the agreement between the Shaws and Hitchcock. Finally Mrs. Quinlisk tendered the balance due to Hitchcock, but he refused to take it, claiming to have made a voluntary assignment for the benefit of his creditors. In 1892 the Shaws had given Hitchcock a deed of the balance of the land for which deeds had not already been given by the Shaws, and Hitchcock had given back a bond and mortgage. Subsequent to the delivery of said bond and mortgage, the Shaws assigned same to the plaintiff, who began proceedings to foreclose the same, making the defendant Louise Quinlisk a party defendant. To the complaint said defendant Quinlisk interposed an answer, setting up said agreement entered into between the Shaws and Hitchcock, and prayed a specific performance of her contract upon her paying to Hitchcock's assignee the small balance due. To this defense the plaintiff demurred.

Adam Finck, for plaintiff.
H. Randolph Anderson, for defendant Quinlisk.

MAREAN, J. I think, when Hitchcock contracted to sell to Quinlisk the lot in question, by the express permission of the Shaws, that Quinlisk acquired a right, as against the Shaws, to a conveyance of the lot, free and clear, upon payment of the balance of the purchase money. If, before the conveyance by the Shaws to Hitchcock, Quinlisk had completed her payment of the purchase money, I think she could have compelled a conveyance to her from the Shaws, though Hitchcock should have refused to pay to them the price stipulated between them. They had put Hitchcock in possession, with all appearance of absolute ownership, and intended that he should sell on installments to people who would pay him their money from time to time without knowledge of the actual state of things. They will not

be permitted, in equity, to disappoint the natural expectation of such purchasers. When they finally conveyed to Hitchcock, they could not take a mortgage from him which should be superior to the right of Quinlisk to have a conveyance, free and clear, upon payment of the balance of her purchase money, and the assignee of the mortgage took it cum onere. I do not think that the relation between the Shaws and Hitchcock was that of partnership, but it was a relation which contemplated fraud, upon any theory of the rights of purchasers other. than that above indicated. Schemes for the sale on the installment plan of cheap suburban lots to poor and ignorant people, by one not the owner, whose rights are to be entirely forfeited after lapse of a certain period, on certain conditions, or by the owner himself, if they are heavily incumbered, lie always in a very shady territory, close to the boundary of fraud. I think, upon the answer, the defendant Quinlisk's right to a conveyance from the assignee of Hitchcock upon payment of the small unpaid balance of her purchase money is paramount to the mortgage, and that the demurrer should be overruled.

There is a suggestion in the plaintiff's brief that defendant has sued Hitchcock, and recovered a judgment for damages. If that be so, of course her right to a conveyance is extinguished, and her judgment lien is subordinate to the mortgage. But this is a matter that must be presuited by a reply. Demurrer overruled, with costs, with leave to reply within 20 days on payment of costs.

Demurrer overruled, with costs, with leave to reply within 20 days on payment of costs.